**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                No. CR 12-1156 JB

DONNA L. ROACH, KELLY D. ROACH,
and MICHAEL G. PATTERSON,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on: (i) C. Barry Crutchfield's Motion to Withdraw as Counsel for Kelly Roach and for Appointment of Counsel, filed June 21, 2012 (Doc. 53)("Motion"); and (ii) the United States' Response to Defendant Kelly Roach's Motion to Withdraw as Counsel and Motion for Hearing on Conflict Waiver, filed July 5, 2012 (Doc. 62). The Honorable Gregory B. Wormuth, United States Magistrate Judge, granted in part the Motion, allowing C. Barry Crutchfield to withdraw as K. Roach's counsel. <u>See</u> Order, filed July 26, 2012 (Doc. 80). The Court held a hearing on August 13, 2012. The Court will grant the remainder of the Motion. The primary issues are: (i) whether, because Mr. Crutchfield represented Defendants Donna L. Roach and Kelly D. Roach in two prior civil cases, much of the factual background of which overlap with this case, and in this case, he has an actual or serious potential conflict of interest; and (ii) if there is a conflict, whether that conflict can be waived. The Court determines that there is no actual or serious potential conflict of interest in this case, and that, even if Mr. Crutchfield has a conflict of interest, K. Roach, D. Roach, and Defendant Michael G. Patterson can waive such conflict to satisfy any concerns that the Court might have.

## FACTUAL BACKGROUND

Sundance Services, Inc., an oilfield waste disposal company, employed D. Roach from on or about 1996 to 2008, where D. Roach served as Sundance Services' President from 1998 to 2008. Sundance Services employed K. Roach from 1998 to 2008 as its plant manager. Sundance Services employed Patterson from on or about 1996 to 2010, as Sundances' sales manager. In 1998, Hannif Mussani and Stephen Pinter were joint owners of Sundance Services, and both lived in London, England. When D. Roach became President of Sundance Services in 2008, she was given authority to sign checks on Sundance Services' behalf, and was responsible for payroll, bookkeeping, accounting, and human resources. Mussani, however, remained in frequent contact with D. Roach, and gave her directions as to operation of the company via telephone conversations and electronic mail transmissions on a consistent basis. In 2008, Mussani purchased Pinter's interest in the company. Problems developed between D. Roach and Mussani in 2008, and D. Roach resigned from Sundance Services as a result of Mussani's allegations that D. Roach had made expenditures of which he did not have knowledge and had not approved.

Sundance Services subsequently filed suit against D. Roach, K. Roach, and Patterson in the United States District Court for the District of New Mexico on February 9, 2010. See Sundance Servs., Inc. v. Roach et al., No. CIV 10-0110 JP/CEG, Complaint for Civil Rico Violations, Fraud, Fraudulent Misrepresentation, Conversion, Constructive Trust, Restitution, and Accounting (Doc. 1). Sundance Services sought relief based on allegations of violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-64 ("RICO"), New Mexico's racketeering laws, N.M.S.A. 1978, §§ 30-4-1 to -6, fraud, fraudulent misrepresentation, and conversion, and sought equitable remedies or constructive trust, restitution, and accounting. See Complaint for Civil Rico Violations, Fraud, Fraudulent Misrepresentation, Conversion, Constructive Trust, Restitution, and

Accounting at 2.  Mr. Crutchfield represented both D. Roach and K. Roach in that proceeding, which the Honorable James A. Parker, Senior United States District Judge, dismissed on September 16, 2011.  See Sundance Servs., Inc. v. Roach et al., No. CIV 10-0110 JP/CEG, Final Order of Dismissal at 1, filed September 19, 2011 (Doc. 213).  Sundance Services filed a second suit against D. Roach, K. Roach, and Patterson on October 31, 2011, alleging all of the same claims as alleged in the first lawsuit.  See Sundance Servs., Inc. v. Roach et al., No. CIV 11-0968 RJS-ACT, Plaintiff's Original Complaint at 1 (Doc. 1).  Mr. Crutchfield represented D. Roach and K. Roach in this lawsuit also.  Based on the parties' stipulation, the Honorable Robert Hayes Scott, United States Magistrate Judge, dismissed the second lawsuit on January 6, 2012.  See Sundance Servs., Inc. v. Roach et al., 11-0968 RJS-ACT, Stipulated Order of Dismissal with Prejudice of All Claims Against Defendants (Doc. 8).

## PROCEDURAL BACKGROUND

D. Roach, K. Roach, and Patterson were indicted in this criminal case on May 16, 2012.  See Indictment (Doc 2).  D. Roach and K. Roach are charged with: (i) Count 1- Wire Fraud Conspiracy in violation of 18 U.S.C. § 1349; Counts 2-40 - Wire Fraud in violation of 18 U.S.C. § 1343; Count 41 - Money Laundering Conspiracy in Violation of 18 U.S.C. § 1956(h); and Counts 42-68 - Money Laundering in Violation of 18 U.S.C. § 1957.  On May 22, 2012, K. Roach was arrested and appeared before the Honorable Kea W. Riggs, United States Magistrate Judge, for an initial appearance.  See Clerk's Minutes, filed May 22, 2012 (Doc. 4).  Steve Sosa, Federal Public Defender, was appointed to represent K. Roach also on May 22, 2012.  See Entry of Appearance, Substitution of Counsel and Request for Discovery at 1 (Doc. 12)("K. Roach Appearance").  Mr. Crutchfield entered an appearance on K. Roach's behalf on May 25, 2012.  See K. Roach Appearance at 1.  D. Roach was subsequently arraigned in front of Judge Riggs on June 5, 2012, see

Clerk's Minutes, filed June 5, 2012 (Doc. 26), and Mr. Crutchfield filed an Entry of Appearance on

D. Roach's behalf on June 8, 2012.  See Entry of Appearance (Doc. 37).

On June 21, 2012, Mr. Crutchfield filed his Motion.  See Doc. 53.  He, with other counsel,

represented the Roaches in Sundance Servs., Inc. v. Roach et al., No. CIV 10-0110 JP/CEG, and

Sundance Servs., Inc. v. Roach et al., 11-0968 RJS-ACT, and entered appearances for both of the

Roaches in this case.  See Motion ¶ 1, at 1.  He states that, because of the nature of the charges in

this federal criminal case, while he "does not believe an actual conflict exists between Defendant

Kelly Roach and Defendant Donna Roach, separate counsel will insure that no actual conflict nor

apparent conflict thereof exists."  Motion ¶ 2, at 1.  Mr. Crutchfield notes that, upon information and

belief, "Defendant Kelly Roach lacks resources to engage separate counsel such that counsel should

be appointed for Defendant Kelly Roach."  Motion ¶ 3, at 1-2.  He notes that Plaintiff United States

of America does not object to the Motion, and requests that the Court issue an order allowing him

to withdrawal as attorney for K. Roach and assigning other counsel to represent K. Roach.  See

Motion at 2.

On July 5, 2012, the United States filed the United States' Response to Defendant Kelly

Roach's Motion to Withdraw as Counsel and Motion for Hearing on Conflict Waiver.  See Doc. 62

("Response").  The United States does not object to withdrawal of Mr. Crutchfield as K. Roach's

counsel and "agrees that no disqualifying conflict appears to exist at this time."  Response at 1.  It

notes, however, that "Kelly Roach's anticipated status as [Mr. Crutchfield's] former client [in the

two civil cases] does carry a significant risk of such a conflict in the future."  Response at 1.  The

United States contends that "[t]he subject matter of that civil litigation overlaps with the subject

matter underlying the charges in the instant case."  Response at 1.  The United States contends that,

because the subject matter of these cases is substantially related, after K. Roach is appointed new

counsel, the Court should conduct a hearing regarding Mr. Crutchfield's continued representation of D. Roach.  See Response at 2.  The United States asserts:

> That hearing should address whether that continued representation creates a potential conflict, whether it is a potential conflict that can be waived, whether Kelly Roach desires to waive it, and, if so, whether the Court should accept that waiver based on Mr. Roach's interests, judicial economy and the interests of others.

Response at 2.

The United States notes that the right to effective assistance of counsel, guaranteed under the Sixth Amendment to the United States Constitution, "contemplates the right to conflict-free representation, and extends to plea negotiations and proceedings, trial, and sentencing."  Response at 3 (citing Holloway v. Arkansas, 435 U.S. 475, 490-91 (1978)).  It contends that this right is "so fundamental that, in Wood v. Georgia, [450 U.S. 261, 271 (1981)] the Supreme Court raised the issue sua sponte and decided the case on that basis."  Response at 4 (citing Wood v. Georgia, 450 U.S. at 271).  The United States asserts that, when a court learns of a potential conflict of interest in a criminal case, the court has the obligation to disqualify an attorney where the obligation is "actual and severe," and, where there is a lesser or only a potential conflict, to conduct a hearing and obtain an informed waiver from the defendant.  Response at 4 (quoting United States v. Trujillo, 302 F. Supp. 2d 1239, 1248 n.19 (D. Kan. 2004)).  The United States contends that the Supreme Court of the United States has explained that "[a]n actual conflict of interest . . . is a conflict that 'affected counsel's performance as opposed to a more theoretical division of loyalties.'"  Response at 5 (quoting Mickens v. Taylor, 535 U.S. 162, 171-72 n.5 (2002)).  It states that, in contrast, a "potential conflict . . . is one that may arise in the future."  Response at 5 (citing United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003)).

The United States argues that, aside from Mr. Crutchfield's previous representation of K.

Roach in this criminal case, because Mr. Crutchfield "previously represented Kelly Roach in civil litigation in a substantially related matter," K. Roach should be considered Mr. Crutchfield's former client.  Response at 6.  The United States asserts that, like cases involving a single attorney representing multiple co-defendants, because this case involves balancing a single attorney's obligations to more than one client, "authorities addressing multiple representation are instructive." Response at 6.  It notes that, while representation of multiple co-defendants is not considered a per se violation of the Sixth Amendment, the danger that an actual conflict of interest will arise is substantially increased.  See Response at 6 (citing United States v. Martin, 965 F.2d 839, 842 (10th Cir. 1992).  The United States contends:

> Joint representation of conflicting interests is suspect because of what it tends to prevent an attorney from doing.  A conflict may prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

Response at 6 (quoting Holloway v. Arkansas, 435 U.S. at 489-90)(internal alterations omitted). The United States notes that, under rule 44(c) of the Federal Rules of Criminal Procedure, district courts have a duty to inquire about joint representation and, unless there is "good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel."  Response at 7 (quoting Fed. R. Crim. P. 44(c)).  The United States recognizes that a defendant, where fully informed, may be permitted to waive a conflict of interest; however, it contends that the Court has the ability to refuse a proffered waiver.  See Response at 8-9 (citing Wheat v. United States, 486 U.S. 153, 160-64 (1988)).  The United States asserts that a district court can refuse a waiver, because of its duty to "ensur[e] that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them . . . [and] that criminal defendants receive a trial that is fair and does not contravene

the Sixth Amendment."  Response at 8 (quoting <u>Wheat v. United States</u>, 486 U.S. at 160-61).  It

states that this substantial latitude in refusing a defendant's conflict of interest applies not only to

cases where an actual conflict can be demonstrated before trial, but also in "the more common cases

where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial

progresses."  Response at 9 (quoting <u>Wheat v. United States</u>, 486 U.S. at 163).

     The United States notes that the New Mexico Rules of Professional Responsibility, while

not determinative, are relevant to whether a court should disqualify counsel on Sixth Amendment

grounds.  <u>See</u> Response at 10 (quoting <u>United States v. Evanson</u>, 584 F.3d 904, 910 (10th Cir.

2009)).  <u>See also</u> D.N.L.R.-Cr. 57.2 ("In all criminal proceedings, attorneys will comply with the

Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico, unless

modified by local rule or Court order.").  It asserts:

> Under the New Mexico Rules of Professional Conduct (NMRA 16-100 et seq.),
> which have been adopted by the United States District Court for the District of New
> Mexico, an attorney 'should not represent a client whose interests are adverse to
> those of a present client, or whose interests are adverse to those of a former client on
> a matter that is the same or substantially related to the previous matter.'

Response at 10 (quoting <u>In re Stein</u>, 2008-NMSC-013, ¶ 22, 143 N.M. 462, 468, 177 P.3d 513, 519).

The United States asserts that, because Mr. Crutchfield represented K. Roach in two prior civil

cases, K. Roach will be a former client of Mr. Crutchfield, subject to NMRA 16-109, which

precludes an attorney from representing "another person in the same or substantially related matter

in which that person's interests are materially adverse to the interests of a former client unless the

former client gives informed consent, confirmed in writing."  Response at 10-11 (quoting NMRA

16-109(A)).  The United States asserts that it does not anticipate any dispute that this criminal case

and the two previous civil cases in which Mr. Crutchfield represented the Roaches are "substantially

related matters," and contends that "it is better to address this potential conflict now rather than to

hope that this potential conflict never develops into an actual conflict."  Response at 11.

The United States argues that there "are serious conflict issues arising from the representation of a former client's co-defendant."  Response at 12.  Among these potential issues, the United States asserts that there is a danger that the representation of D. Roach, a former client's co-Defendant, could preclude Mr. Crutchfield from "considering viable pre-trial, and sentencing tactics and strategies that otherwise would be available to non-conflicted counsel." Response at 12. The United States notes that, because the Superseding Indictment, filed June 20, 2012 (Doc. 49), reveals that D. Roach and K. Roach have varying degrees of culpability and involvement in the alleged conspiracy, Mr. Crutchfield will likely face an actual conflict when it comes to "[b]lame shifting, or an attempt to disassociate one defendant from another, [which] normally are viable strategies" for lessening a defendant's plea, conviction, or sentence.  Response at 12-13. The United States contends that another actual conflict of interest will probably arise when, because Mr. Crutchfield likely obtained confidential information from K. Roach, it would benefit D. Roach to explore such information on cross-examination of K. Roach, but the rules of professional responsibility would preclude Mr. Crutchfield from examining him with privileged information. See Response at 15.  Another conflict of interest could arise if D. Roach wishes to take the stand, possibly placing Mr. Crutchfield in the "precarious position in which he must elicit testimony favorable to [D. Roach]," but which may be unfavorable to K. Roach or which may disclose confidential information that he learned in his previous representation of K. Roach.  Response at 15.

The United States reiterates that, should K. Roach still decide to give fully informed, written consent for Mr. Crutchfield to represent D. Roach, the Court still must scrutinize the possibility of conflict arising later in the case, and, if the Sixth Amendment so demands, refuse to accept K. Roach's waiver.  See Response at 17.  The United States requests, therefore, that, after new counsel

is appointed for K. Roach, the Court hold a hearing to determine: (i) whether Mr. Crutchfield's continued representation of K. Roach poses a potential conflict of interest; (ii) whether K. Roach can waive the conflict; (iii) whether he does in fact validly waive the conflict of interest; and (iv) whether the Court should accept or decline the waiver.  See Response at 17-18.

On July 16, 2012, Mr. Crutchfield filed his Reply to Response of Withdrawal of Counsel for Kelly Roach and Issue of Conflict of Interest in Representation of Donna Roach.  See Doc. 74 ("Reply").  Mr. Crutchfield argues that, because the basic issue underlying the case is whether a crime occurred at all, and it is both D. Roach's and K. Roach's position that it did not, there is no potential conflict of interest in Mr. Crutchfield's representation of D. Roach in this criminal case:

> It has been and is the position of Ms. Roach that no crime was committed in that she was acting at the direction and command of owner of Sundance Services, Inc.. [sic] As such, there is no indication of a conflict between Donna Roach and Kelly Roach as to the events that occurred.  It must be noted that Kelly Roach had some dealings/participation with directions of Mr. Mussani but the overwhelming amount of dealings, directions and actions taken involved Ms. Roach and the directions given by Mr. Mussani.

Reply ¶ 3, at 5.  Mr. Crutchfield agrees with the United States that, assuming there is a potential conflict of interest,  before a hearing regarding whether K. Roach can validly waive any potential interest, the Court should first appoint K. Roach independent counsel to represent him at such a hearing.  See Reply ¶ 4, at 6.  Mr. Crutchfield states that he recognizes the Court has substantial latitude to accept a waiver in this case under United States v. Evanson, but contends that "there is no actual conflict between Kelly Roach and Donna Roach under the unusual facts of this matter." Reply ¶ 5, at 6.  He states: "However, it must be noted that it may . . . be necessary to institute litigation against Sundance Services, Inc. for breach of the Settlement Agreement [reached in the civil cases]."  Reply ¶ 6, at 6.  Mr. Crutchfield asserts that the United States' argument, that he should likely be precluded from representing D. Roach in this matter, is "clearly predicated upon

examination of the records of Sundance Services and banking records with no apparent information of the events presented in this matter . . . [which] presents a far more substantially complex case with the 'rest of the story' being developed."  Reply at 6.  Mr. Crutchfield thus argues that "no actual conflict exists between Kelly Roach and Donna Roach," and that he has no information which "would limit or impinge upon counsel to represent Donna Roach."  Reply at 6.

Judge Wormuth granted in part Mr. Crutchfield's Motion, allowing Mr. Crutchfield to withdraw as K. Roach's counsel.  See Order, filed July 26, 2012 (Doc. 80).  Judge Wormuth additionally ordered K. Roach to retain counsel as soon as possible, and for such counsel to file an entry of appearance within ten days, or alternatively, if no entry of appearance was timely filed, Judge Wormuth would appoint counsel to represent K. Roach.  See Order at 1-2.

On August 6, 2012, attorney Gary C. Mitchell filed his Entry of Appearance on behalf of K. Roach.  See Doc. 87.

The Court held a hearing on August 13, 2012, to address whether K. Roach would waive the potential conflict of interest that Mr. Crutchfield's representation of D. Roach presented, and whether the Court should accept such waiver.  See Transcript of Hearing at 2:24-3:5 (August 13, 2012)(Court)("Tr.").[1]  Mr. Crutchfield noted that, since Mr. Mitchell entered his appearance on behalf of K. Roach, Mr. Crutchfield presented him with the information he had in regards to the case, and that they have since consulted about the facts and background of this criminal case.  See Tr. at 3:6-12 (Crutchfield).  He asserted that he and Mr. Mitchell do not believe that there is a conflict between the Roaches or "quite frankly under the facts of this case a potential conflict down the line."  Tr. at 3:20-22 (Crutchfield).  The Court inquired whether, should the Roaches need to sue

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

to enforce the settlement agreement, Mr. Crutchfield would be involved in that civil case.  See Tr. at 3:23-4:1 (Court).  Mr. Crutchfield replied that he would be involved in that case as a fact witness to the settlement, but not as an attorney, and has discussed that possibility with Mr. Mitchell.  See Tr. at 4:2-12 (Crutchfield, Court).

Mr. Mitchell explained that he came into the case when Mr. Crutchfield asked if he would be interested in discussing the possibility of representing K. Roach.  See Tr. at 5:17-21 (Mitchell). He met with K. Roach, D. Roach, and Mr. Crutchfield for several hours at his office to discuss the matter, and he explained to K. Roach that his job, should he take K. Roach as his client, is to get the best outcome for K. Roach, even at the expense of his wife, D. Roach.  See Tr. at 6:6-17 (Mitchell). Mr. Mitchell stated that he does not see that issue arising in this case.  See Tr. at 6:18-19 (Mitchell). Mr. Mitchell asserted that, while he does see that there is a problem solely because of D. Roach and K. Roach are married and co-Defendants, under the facts of this case, he does not see that a conflict exists or that there is potential for a conflict to arise in the future.  See Tr. at 6:19-7:3 (Mitchell). Mr. Mitchell noted that a clear line has been drawn of which all of the parties are aware: when he calls and D. Roach answers the telephone, he has told her that he cannot speak to her at all without Mr. Crutchfield on the telephone as well, and vice versa when Mr. Crutchfield calls and K. Roach answers, and that all parties have come to understand, and are satisfied with, such a line existing. See Tr. at 7:4-21 (Mitchell).  Mr. Mitchell stated that, beyond there not being a conflict or a foreseeable future conflict, he believes that, in light of Mr. Crutchfield's level of competency in oil field matters and Mr. Crutchfield's knowledge of the subject matter of the case, "it would hurt [K. Roach] if Mr. Crutchfield was not allowed to continue to represent Donna [Roach] in this particular matter."  Tr. at 7:22-8:2 (Mitchell).

The Court responded that its concern with the potential conflict is not with Mr. Mitchell's

ability to represent K. Roach, nor with K. Roach's apparent consent to Mr. Crutchfield's continued representation of D. Roach, but its concern is whether Mr. Crutchfield will be able to "zealously and effectively represent" D. Roach given that he also owes loyalties to K. Roach as his former client. Tr. at 8:20-9:1 (Court).  Mr. Mitchell replied that he had discussed that matter with both his client and with Mr. Crutchfield, and, based on the responses from his client and their similarity to Mr. Crutchfield's representations, the facts suggest that D. Roach's and K. Roach's roles were so dissimilar and separated, that Mr. Mitchell does not believe there is any confidential information Mr. Crutchfield learned from K. Roach that would impede Mr. Crutchfield from zealously and effectively representing D. Roach.  See Tr. at 9:8-10:8 (Mitchell).

The Court then inquired whether Mr. Mitchell believed any conflict existed, and asked Mr. Mitchell whether he saw anything in Mr. Crutchfield's representation of D. Roach and his prior representation of K. Roach, or in anything that K. Roach said or Mr. Crutchfield did, that would cause problems for K. Roach in this criminal case at any time going forward.  See Tr. at 10:14-17 (Court).  Mr. Mitchell replied that he "[a]bsolutely" did not see any problem.  Tr. at 10:18 (Mitchell).  Mr. Mitchell clarified that he had not read through all of the materials related to Sundance, nor had he had the opportunity to go through a full accounting of the record for the prior civil cases, but he did not see anything at this juncture that indicated any conflict down the road in this case.  See Tr. at 10:23-11:6 (Mitchell).  The Court asked Mr. Mitchell whether, if he comes upon something in the course of the trial related to Mr. Crutchfield's participating in the case that were to create problems for K. Roach, he would bring that to the Court's attention.  See Tr. at 11:7-13 (Court).  Mr. Mitchell replied that, first, he would discuss the matter with his client, then he would write a letter to Mr. Crutchfield advising him of what Mr. Mitchell felt he had to do, and then bring it before the Court.  See Tr. at 11:14-20 (Mitchell, Court).  In response to the Court's inquiry

whether K. Roach was willing to sign a conflict waiver for Mr. Crutchfield's representation of D. Roach in the matter, Mr. Mitchell replied that, after discussing the matter with K. Roach, K. Roach is willing to sign a waiver, and Mr. Mitchell is willing to acknowledge that he fully advised K. Roach in regard to the waiver.  See Tr. at 11:21-12:8 (Mitchell, Court).

The Court then asked the United States, in light of the facts Mr. Crutchfield presented in his Reply, what potential conflicts the United States sees that will arise if Mr. Crutchfield continues to represent D. Roach in the matter.  See Tr. at 12:17-25 (Court).  The United States responded that its concern is a situation arising in which D. Roach will benefit from taking a position contrary to K. Roach's interest, and Mr. Crutchfield will be prevented from doing so, because to do so would require using information that is attorney-client privileged or confidential.  See Tr. at 13:7-19 (Willliams).  The Court then asked, because no one was contending a conflict exists, what the danger is in allowing Mr. Crutchfield to proceed as D. Roach's counsel, and if a conflict should arise requiring Mr. Crutchfield to withdraw, the Court to deal with the issue at that time.  See Tr. at 13:20-14:3 (Court).  The United States asserted that, while it could not contend that there would irreparable harm in such a case, the Court's interests in judicial economy and maintaining the flow of the case weigh against such a course of action.  See Tr. at 14:4-8 (Williams).  The United States conceded that, at the present time, it did not see any conflict nor high probability that a conflict will arise in the future from Mr. Crutchfield's representation of D. Roach, and that it will be satisfied if the Court requires oral waivers at this hearing and the submission of written waivers after the hearing.  See Tr. at 14:16-15:5 (Williams, Court).

The Court stated that it would take the matter under advisement, but because the Roaches and counsel traveled to the Court from long distances, it would proceed to perform the colloquy with the Roaches, receive both of their oral waivers, and allow counsel to provide written waivers

-13-

following the hearing.  See Tr. at 16:13-23 (Court).  The Court then performed the colloquy with

D. Roach:

> COURT: First of all, I'm going to explain to you that you under the United States
> Constitution [you] not only have a right to[] counsel but you have a right to a
> conflict-free[] counsel.  And what that means is that you have the right to a counsel
> that has loyalty only to you, that they will zealously and fully represent you and
> without regard to anyone else's interest.  And . . . you have that right under the
> Constitution.  And if you wish to have conflict-free counsel, then you are entitled to
> it and you can ask this Court at any time and we will make [sure] that that
> is provided to you.  Do you understand your rights under the constitution to have a
> conflict-free counsel?
>
> D. ROACH:  Yes.
>
> THE COURT: . . .  And do you understand that that right is very -- it's guarded by
> the Constitution, but it's also guarded very zealously by this Court?  The Court wants
> to maintain and make sure that you have that counsel, and the United States does too
> and everybody in this room does.  They want to make sure you have that [right].  So
> [do you] understand the importance of that?  I know you may have an attachment to
> Mr. Crutchfield because he's represented you in prior cases and he may be a friend,
> but you[ have] got very serious charges pending against you, you[ have] . . . the
> United States of America Government[,] with all their resources bringing charges
> against you.  This Court, and the Constitution wants to make sure that you
> understand you have the right to a conflict-free counsel.  Do you understand that
> right?
>
> D. ROACH: Yes, sir
>
> THE COURT:  All right.  And do [you understand] the facts surrounding Mr.
> Crutchfield's previous representation: in one civil case in federal court, the second
> federal case in civil court, and [that] he also represented Mr. Roach, your husband,
> in this case in federal court?  So you understand he [has] represented Mr. Roach
> three times in federal court?  Do you understand that?
>
> D. ROACH: Yes, sir.
>
> THE COURT: Is there anything about that representation, his representation of your
> husband, Mr. Roach: Did they go off . . . [alone] and have some conversations? [D]id
> they take some trips together[?] [D]id they do some consultations or something
> [similar?] [I]s there anything about that representation that you want to know about
> before you make any sort of waiver and agree to Mr. Crutchfield continuing as your
> attorney?

D. ROACH: No, sir.

THE COURT:  Do you understand that Mr. Crutchfield, because he was Mr. Roach's attorney three times -- in this case and two federal civil cases -- that he still has duties of loyalty stemming from his previous representations of Mr. Roach in those three federal cases?  Do you understand [Mr. Crutchfield] still has some duties of loyalty to him because he was his attorney?

D. ROACH: Yes, sir.

THE COURT:  And do you understand that Mr. Crutchfield's duties to Mr. Roach may impact his representation of you[,] should he recall some pertinent information that he learned during the course of his representation of Mr. Roach?  You may think of something down the road that nobody's thinking of now, [which] is very important, very terrible, but, you know, I know you haven't probably been through a lot of litigation, but everybody in this room has been. [There are things] that [do not] look very important at the beginning of . . . trial, [or] litigation, [that] all of a sudden becomes terribly important down the [road or at] trial.  Do you realize [that Mr. Crutchfield] may remember something later on that he learned from Mr. Roach that may be important . . . to your case[,] but he may not be able to do anything with [the information,] because of his representation of Mr. Roach in the three other prior representations?

D. ROACH: Yes, sir.

THE COURT:  And do you understand there [is] a risk that Mr. Crutchfield will have to choose between his duty of loyalty to [K. Roach] and his duty [to] zealously advocate for you in this case?  Do you understand . . . he may have to choose at some point?

D. ROACH: Yes, sir.

THE COURT:  And . . . if Mr. Roach chooses at some point to cooperate or to testify in this case[,] Mr. Crutchfield may be forced to cross-examine Mr. Roach[,] and then his duty of loyalty to [K. Roach] may affect [Mr. Crutchfield's] performance in his cross-examination on your behalf?  Do you understand that? . . . .

D. ROACH: Yes.

THE COURT:  All right.  Additionally, Mr. Crutchfield's duties to Mr. Roach may affect trial strategies, whether to call you as a witness, whether to call [K. Roach] as a witness, including arguments he may make in closing[,] or something about relative culpability -- who [is] really to blame here.  Do you understand that he may have to make some decisions because of his prior representation, that he would[ not] make if he had not represented Mr. Roach in the past?

-15-

D. ROACH: Yes, sir.

THE COURT:  And you[ are] still willing, knowing all that, and understanding it[,] and seeing down the road[,] and getting that picture as best you can, you still want to waive any conflict that Mr. Crutchfield has and have him represent you in this case?

D. ROACH: Yes I do.

THE COURT:  Having Mr. Crutchfield be your attorney is that important to you?

D. ROACH: Yes.

THE COURT:  Has Mr. Crutchfield hired another attorney to sit down with you and evaluate your waiver here today[,] and to advise you of your rights to have a conflict-free counsel[,] and talk to you about whether you should have a different counsel than Mr. Crutchfield?

MR. CRUTCHFIELD:  We have not done that judge.  It is certainly not a problem to do so.

THE COURT:  You might give that some thought.  I'm going to take your waiver today orally[,] but as I [indicated] to Mr. Crutchfield[,] I'm going to be waiting for a written waiver as well, and what you may want to do is to have another attorney come in and sit down and talk to you before you execute that waiver. . . .

THE COURT:  All right.  Already.  Ms. Roach knowing that a conflict may arise in the future and the risk associated with such a conflict, do you still wish to waive that conflict and continue with Mr. Crutchfield as your attorney in this case?

D. ROACH: Yes.

Tr. at 18:9-22:23 (Court, D. Roach).  During D. Roach's colloquy, when the Court inquired whether D. Roach had consulted with another attorney about Mr. Crutchfield's continued  representation of her in this case, Mr. Crutchfield stated that he intended that D. Roach meet with independent counsel before executing the written waiver, but Mr. Crutchfield was waiting to have D. Roach meet with independent counsel until the Court intimated it would allow Mr. Crutchfield's continued representation of D. Roach contingent upon written waivers.  See Tr. at 22:3-18 (Crutchfield).  In

response to the Court asking the United States and Mr. Mitchell, whether there was anything that they wished the Court to ask D. Roach, they stated that there was not.  See Tr. at 22:24-23:5 (Court, Williams, Mitchell).  The Court then performed the colloquy with K. Roach:

> THE COURT: All right Mr. Roach I'd [like] to ask you some questions. . . . [Y]ou heard me ask Ms. Roach some [questions] about her understanding about a conflict-free counsel.  I'll be a little more a brief with you. [You] have heard me explain to [D. Roach] that the United States Constitution not only [] gives you a right to counsel in these criminal proceedings[,] but it gives you the right to a conflict-free counsel. [The Court is] not concerned about Mr. Mitchell and . . . Mr. Williams you [are] not either right?  That's not your concern?

> MR. WILLIAMS:  No, sir.

> THE COURT:  So [the Court is] not concerned about Mr. Mitchell being conflict-free counsel. . . . [B]ut [the Court is] worried about Mr. Crutchfield, because Mr. Crutchfield[ is] not representing you any longer and he[ is] representing Mrs. Roach, and so . . . , are you comfortable with him continuing to represent her even though he represented you in three federal cases here in  federal court?

> K. ROACH: Yes, sir I am.

> THE COURT:  But do you understand what a conflict-free counsel is? . . . [Y]ou hired Mr. Crutchfield and now he[ is] going to have loyalties to Ms. Roach, and he may [--] in trying to balance [those] loyalt[ies] with his loyalty to you as his attorney -- as you were his client and . . . he was your attorney in the past, you may have to balance those and make some -- . . . he may have to make some decisions where he [is now] representing her and [will have to] sacrific[e] your interest.  So you understand that could occur?

> K. ROACH:  Yes, sir I do.

> THE COURT:  And you still want to waive any sort of conflict?

> K. ROACH: Yes, sir.

> THE COURT:   You think it[ is] that important for Ms. Roach to have Mr. Crutchfield as her attorney, [important enough] that you[ are] willing to waive that [right]?

> K. ROACH: Yes I do.

> THE COURT:  All right. But you understand what a conflict-free counsel is under

the [United States] Constitution?  You understand that concept?

K. ROACH: Yes, sir.

THE COURT:  And you understand that your former attorney, Mr. Crutchfield, is now going to be representing Ms. Roach in this case, which he prior -- he previously represented you in this case, and his interests and his loyalty is going to be [only] to her?  Do you understand that?

K. ROACH: Yes, sir I do.

THE COURT:  Now, you probably know better than anybody what you told Mr. Crutchfield, what you[ have] disclosed to him, what he's seen, and you[ are] comfortable with him being the attorney for Mrs. Roach and not being your attorney? [A]nd [knowing that] he may have to use some of this information against you?  Are you comfortable with that?

K. ROACH: Yes I am.

THE COURT:  You[ are] willing to waive any conflict?

K. ROACH: Yes, sir.

 THE COURT:  Do you understand that Mr. Crutchfield still owes certain duties of loyalty to you, including a duty not to reveal information that you told him in [confidence]?  Do you understand that?

K. ROACH: Yes, sir.

THE COURT: And do you understand that Mr. Crutchfield [--] in order to zealously advocate on behalf of Ms. Roach [--] Mr. Crutchfield may make some arguments that are detrimental to you in your defense while he[ is] zealously advocating on behalf of Ms. Roach?  Do you understand that could happen down the road?

K. ROACH: Yes, sir.

THE COURT:  I know you haven't been through as many cases as the [rest of] us here . . . but sometimes you just can[not] see right now[, but when you] get there at the closing argument and it [all of a sudden] looks very important?  Do you understand that could happen[,] and if you waive it up-front here you may not be able to complain about it at that point?  Do you understand that?

K. ROACH: Yes, sir I do.

THE COURT:  And do you understand that if you choose to testify or cooperate with

-18-

the United States you may find that Mr. Crutchfield, if Ms. Roach does[ not] do that, maybe he[ is] standing there[,] right here in this courtroom cross-examining you in a very adversarial manner?  Do you understand that?

K. ROACH: Yes I do.

THE COURT:  Are you comfortable [with] that?

K. ROACH: Yes [Your Honor].

THE COURT: [And] you[ are] willing to waive a conflict and face that prospect down the road?

K. ROACH: Yes, sir.

THE COURT: Mr. Mitchell is your attorney, you[ have] had a chance to talk to him. Has he reviewed this waiver with you[,] and after you[] talked to him, you[ are] still comfortable with giving your waiver of Mr. Crutchfield's conflicts in this case and representation of Ms. Roach?

K. ROACH: Yes, sir.

THE COURT:  All right.  Knowing that a potential conflict may later materialize between Mr. Crutchfield's duty  to you and to Ms. Roach[,] and the risk associated with a continued representation of Ms. Roach[,] do you wish to waive that conflict in this case?

K. ROACH: Yes I do, Your Honor.

Tr. at 23:10-26:22 (Court, K. Roach).  In response to the Court asking whether the United States was satisfied with the colloquy and K. Roach's waiver, the United States responded that, although the Court had addressed the matter, the United States wanted to make sure that K. Roach was informed about waiving any future assertion of attorney-client privilege or confidential information which Mr. Crutchfield gathered during the course of his representations of K. Roach in the civil cases.  See Tr. at 27:2-7 (Williams).  The Court asked K. Roach whether he realized that Mr. Crutchfield may, at some point, use information that K. Roach had given him in the civil cases, and whether K. Roach still waived any conflict that may arise out of Mr. Crutchfield's representation of D. Roach.  See Tr.

at 27:8-13 (Court, K. Roach).  K. Roach responded that he was aware of that possibility and is still willing to waive any conflict that may arise out of Mr. Crutchfield's representation of D. Roach. <u>See</u> Tr. at 27:11-14 (Court, K. Roach).  The Court asked Mr. Crutchfield and Mr. Williams whether there were any further questions that the Court should ask K. Roach in the colloquy, to which they both responded that there were not.  <u>See</u> Tr. at 27:17-28:5 (Court, Crutchfield, Mitchell).  The Court concluded by advising K. Roach that, because it is the Court's duty to guarantee a conflict-free counsel, should he feel at any time uncomfortable with Mr. Crutchfield's representation of D. Roach, he should raise that concern with the Court immediately, and K. Roach responded that he understood.  <u>See</u> Tr. at 28:14-20 (Court, K. Roach).  Before recessing, Mr. Crutchfield stated that he anticipates D. Roach's written waiver taking a little over a week, because he would need time to allow D. Roach to meet with independent counsel before signing the conflict waiver.  <u>See</u> Tr. at 29:18-24 (Crutchfield).  The Court responded that such a delay would be acceptable to the Court under the circumstances.  <u>See</u> Tr. at 29:25 (Court).

As of the date of this Memorandum Opinion and Order, no party has filed a written waiver with the Court.

## LAW REGARDING THE SIXTH AMENDMENT AND ATTORNEY CONFLICTS

The "essential aim" of the Sixth Amendment of the United States Constitution "is to guarantee an effective advocate for each criminal defendant."  <u>Wheat v. United States</u>, 486 U.S. at 159.  Derivative of the right to counsel is a defendant's right to representation by the counsel of his choice.  <u>See</u> <u>United States v. McKeighan</u>, 685 F.3d 956, 966 (10th Cir. 2012)(noting that the Sixth Amendment "guarantee includes the 'right to be represented by an otherwise qualified attorney whom the defendant can afford to hire, or who is willing to represent the defendant . . . .'")(quoting <u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 617, 624-25 (1989)); <u>United States v.</u>

Gonzalez-Lopez, 548 U.S. 140, 144 (2006)(noting that "an element of [the Sixth Amendment] right is the right of a defendant who does not require appointed counsel to choose who will represent him"). If a court wrongly deprives a defendant of representation by the defendant's counsel of choice, such a deprivation does not have to prejudice the defendant for it to be reversible error; rather, the deprivation of counsel is a "structural error, and is complete when the defendant is erroneously prevented from being represented by the lawyer [the defendant] wants, regardless of the representation . . . received." United States v. McKeighan, 685 F.3d at 966 (quoting United States v. Gonzalez-Lopez, 548 U.S. at 146-150)(internal citations and quotations omitted). In addition to the right to counsel of a defendant's choice, the Sixth Amendment includes the right to conflict-free counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981)("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."). "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant." Wheat v. United States, 486 U.S. at 159. The United States Court of Appeals for the Tenth Circuit has noted: "Courts have the duty to 'balance a defendant's constitutional right to retain counsel of his choice against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice.'" United States v. McKeighan, 685 F.3d at 968 (quoting United States v. Collins, 920 F.2d 619, 626 (10th Cir. 1990)). The Tenth Circuit recognizes, however, that courts may deprive a defendant of the defendant's counsel of choice "only where such drastic action is necessary to further some overriding social or ethical interest." United States v. McKeighan, 685 F.3d at 968 (quoting United States v. Collins, 920 F.2d at 626). This is because of the federal courts' ethical interest in "ensuring that criminal trials are

conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." United States v. McKeighan, 685 F.3d at 968 (quoting Wheat v. United States, 486 U.S. at 160). The Supreme Court has acknowledged that the Sixth Amendment requires that district courts "recognize a presumption in favor of [the defendant's] counsel of choice, . . . [but] that presumption may be overcome not only by a demonstration of an actual conflict but by a showing of a serious potential for conflict." Wheat v. United States, 486 U.S. at 164.

The first step in the conflict analysis is to determine whether there is a conflict of interest or the serious potential for a conflict of interest. See United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000)("[A] court that learns of a possible conflict must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.")(internal citations omitted). Where the government is aware of a conflict of interest, it "has a duty to bring it to the court's attention and, if warranted, move for disqualification." United States v. Migliaccio, 34 F.3d 1517, 1528 (10th Cir. 1994). "An actual conflict exists when defense counsel is compelled to comprise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." United States v. Bolivar, No. CIV 12-0128 JB, 2012 WL 3150430, at *11 (D.N.M. July 20, 2012)(Browning, J.)(quoting Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000)). The Supreme Court has explained that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Mickens v. Taylor, 535 U.S. at 172 n.5. For example, "an attorney has a potential conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." United States v. Perez, 325 F.3d at 125. The United States District Court for the District of Kansas has held that it is

appropriate to assume initially that the defendant's choice of counsel is proper unless the government can lay a foundation showing good cause to believe that there is either already an actual conflict of interest interfering with the ability of counsel to provide effective assistance, or a probability that such a conflict will develop in the case.

United States v. Trujillo, 302 F. Supp. 2d at 1247-48.  In determining whether the United States has met this burden, the trial court must balance "a defendant's Sixth Amendment right to counsel of choice against the interests of the proper and fair administration of justice."  United States v. Kolodesh, 2012 WL 1156334, at *4 (E.D. Penn Apr. 5, 2012)(citing United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir. 1999)).

The test for disqualification in joint-representation and in successive-representation cases appears to be the same.  The Supreme Court has noted that, in joint-representation cases, the danger is "in what the advocate finds himself compelled to refrain from doing."  Holloway v. Arkansas, 435 U.S. 475, 488 (1978) (emphasis in original).  The Tenth Circuit has held that the same conflict principles apply to successive-representation cases.  See United States v. Winkle, 722 F.2d at 610 ("These principles concerning conflicts of interest are not restricted to cases of joint representation of co-defendants at a single trial.").  "An actual conflict in successive representation may arise where the subject matter of the previous representation is substantially related to the case being tried, the attorney reveals privileged communications of the former client stemming from the previous representation, or the attorney's loyalties are otherwise divided." Pinkney v. United States, 851 A.2d 479, 487 (D.C. Ct. App. 2004)(quoting Veney v. United States, 738 A.2d 1185, 1193 (D.C. Ct. App.1999)) (emphasis omitted).  See United States v. Bowie, 892 F.2d 1494, 1502 (10th Cir. 1990)(noting that "the potential for conflict is great" in a successive-representation case "where there is a substantial relationship between the cases").  The Court of Appeals of the District of Columbia has laid out a trial court's analysis when  analyzing whether a successive representation

presents a conflict of interest:

> [T]he trial court should "examine whether the subject matter of the first representation is substantially related to that of the second," whether "the conflict could cause the defense attorney improperly to use privileged communications in cross-examination," and whether "the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client.

Pinkney v. United States, 851 A.2d at 487 (quoting United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994)).  "When a district court finds that counsel has a conflict of interest, real or potential, it retains substantial latitude to disqualify counsel."  United States v. McKeighan, 685 F.3d at 968 (quoting United States v. Collins, 920 F.2d at 627).  The Seventh Circuit has held that, before disqualifying counsel based on a potential conflict, the district court should "evaluate (1) the likelihood the conflict will actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether there are alternative measures available other than disqualification." United States v. Turner, 594 F.3d 946, 952 (7th Cir. 2010).  A district court's ruling regarding a defendant's right to counsel is reviewed on appeal for abuse of discretion.  See United States v. McKeighan, 685 F.3d at 968 (citing Wheat v. United States, 486 U.S. at 164 ("The evaluation of the facts and circumstances regarding a defendant's right to counsel must be left primarily to the informed judgment of the trial court.")).

If a conflict of interest exists, "the attorney usually may be excluded unless the likelihood and severity of the conflict are minimal compared to the defendant's interest in obtaining counsel of choice." United States v. McKeighan, 685 F.3d at 968 (quoting United States v. Nichols, 841 F.2d 1485, 1503 (10th Cir. 1988)).  A defendant may therefore waive the conflict.  See Peretz v. United States, 501 U.S. 923, 936 (1991)("The most basic rights of criminal defendants are . . .

subject to waiver."); United States v. Hunt, 62 F. App'x 272, 276 (10th Cir. 2003)(unpublished)[2]

("Nevertheless, a defendant may knowingly and intelligently waive the right to conflict-free

counsel.").  "[A] district court should affirmatively participate in a defendant's waiver decision . .

. to determine if he knowingly and intelligently made the decision to continue with conflicted

counsel."  United States v. Hunt, 62 F. App'x at 275.  The Tenth Circuit has held that, to effect a

valid waiver, a trial court should "affirmatively participate in the waiver decision by eliciting a

statement in narrative form from the defendant indicating that he fully understands the nature of the

situation and has knowingly and intelligently made the decision to proceed with the challenged

counsel."  United States v. Winkle, 722 F.2d at 611 (citations omitted).  A district court "should also

determine whether the defendant understands the facts underlying the conflict and the dangers and

risks associated with waiving the conflict."  United States v. Hunt, 62 F. App'x at 276 (citing Eden

v. Hannigan, 87 F.3d 1109, 1118 (10th Cir. 1996)).  Where a colloquy does not reflect that the

defendant understood those risks and knowingly and intelligently waived the conflict, the Tenth

Circuit has held that there is a Sixth Amendment violation where the conflict adversely affected

counsel's performance.  See Eden v. Hannigan, 87 F.3d at 1112, 1118.  The district court is "allowed

substantial latitude in refusing waivers of conflicts of interest."  Wheat v. United States, 486 U.S.

at 163.  The United States Court of Appeals for the First Circuit has held that the "government bears

---

[2]United States v. Hunt is an unpublished order and judgment, but the Court can rely on it to the extent its reasoned analysis is persuasive in the present case.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").

In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).

a 'heavy burden' in demonstrating that disqualification is justified" and that "disqualification of . . . counsel should be a measure of last resort."  In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988).

**ANALYSIS**

The Court will grant the Motion.  There is no current conflict of interest in this case, and any potential conflict is too speculative to support disqualifying Mr. Crutchfield.  Furthermore, although K. Roach and D. Roach have not yet submitted written waivers to the Court, all parties have agreed that, to the extent a potential conflict of interest exists or will exist in the future, such conflict is waivable and they have provided their oral waivers.

**I.      MR. CRUTCHFIELD'S REPRESENTATION OF D. ROACH DOES NOT CREATE A CURRENT OR SERIOUS POTENTIAL CONFLICT OF INTEREST.**

The United States does not contend that any disqualifying conflict appears to exist; however, because the subject matter of this criminal case overlaps with the two civil cases in which Mr. Crutchfield represented both K. Roach and D. Roach, to meet its duty to bring conflicts of interest to the Court's attention, the United States brought to the Court's attention the possibility of a serious potential conflict of interest resulting from Mr. Crutchfield's continued representation of D. Roach. See Response ¶ 1, at 1.  The United States asserts that, because K. Roach is Mr. Crutchfield's former client in a substantially related civil case and in this case, the Court must determine whether Mr. Crutchfield's continued representation of D. Roach creates a potential conflict, whether it is a potential conflict that can be waived, whether K. Roach and D. Roach desire to waive it, and if so, whether the Court should accept the waiver.  See Response ¶ 1, at 2.

The Sixth Amendment's right to counsel presumes a defendant's right to be represented by the counsel whom the defendant chooses.  See United States v. McKeighan, 685 F.3d at 966 (noting

-26-

that the Sixth Amendment "guarantee includes the 'right to be represented by an otherwise qualified attorney whom the defendant can afford to hire, or who is willing to represent the defendant . . . .'"). The Sixth Amendment's right to counsel also includes the right to representation by a conflict-free counsel. See Wood v. Georgia, 450 U.S. at 271 ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."). If a court wrongly deprives a defendant of representation by the defendant's counsel of choice, such a deprivation does not have to prejudice the defendant for it to be reversible error; rather, it is a "structural error, and is complete when the defendant is erroneously prevented from being represented by the lawyer [the defendant] wants, regardless of the representation . . . received." United States v. McKeighan, 685 F.3d at 966.

In United States v. Stewart, 185 F.3d 112 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit was presented with a situation in which the United States asserted that there was a disqualifying conflict in a law firm's representation of the defendant in his criminal case, because the law firm was representing the defendant, and four of the government's witnesses -- his co-workers -- in a parallel civil case. 185 F.3d at 119. The Third Circuit held that the district court did not abuse its discretion in disqualifying the law firm from representing the defendant in light of its representation of its representation of the government's four witnesses, going as far as to note that "even if we are to review the court's decision de novo, we would still uphold its determination . . . ." 185 F.3d at 120. The Third Circuit noted that, because the law firm's attorneys "would have been part of a team of attorneys required to cross-examine the four individuals testifying for the government," who are also the law firm's clients, "[the Defendant]'s right to effective counsel could have been compromised by the divided loyalties of his own attorney." 185 F.3d at 121. The Third Circuit stated that its conclusion was supported by the district court's pointing out that "it could be

an 'obvious' defense theory at trial to focus blame for wrongdoing on the four individuals." 185 F.3d at 121 (quoting United States v. Stewart, 1997 WL 611594, at *3 (E.D. Pa. Sept. 24, 1997)). Although the defendant contended that this potential tactic was contrary to the "publicly declared strategy of defense that counsel had already adopted," 185 F.3d at 121, the Third Circuit held that, because an "attorney may change his strategy to provide the defendant with the best possible defense," the firm's continued representation of the defendant and the United States' witnesses presented too great of a serious potential for conflict, United States v. Stewart, 185 F.3d at 122.

This case is distinguishable from United States v. Stewart, because Mr. Crutchfield's representation of K. Roach in all cases has terminated; Mr. Crutchfield has already withdrawn as K. Roach's attorney in the criminal case, and the parallel civil cases have concluded.  The Third Circuit in United States v. Stewart seemed particularly concerned with the possibility that, by allowing the law firm to continue its representation of the defendant in the civil case while representing the government's four witnesses in the parallel civil case, unforseen circumstances would arise in which the attorney would not be able to adequately cross-examine the government witnesses and thus not competently defend the defendant.  See  United States v. Stewart, 185 F.3d at 122 (noting that a court "cannot foresee what ramifications can flow from multiple representations. Thus, the court had good reason to doubt 'that anyone could be sufficiently prescient to foresee the exact path this case [would] take either in the time remaining before trial or at trial.'").  In this case, because Mr. Crutchfield is no longer currently representing K. Roach in any case, K. Roach and Mr. Crutchfield both know the extent of information that K. Roach disclosed to Mr. Crutchfield in the previous civil cases, including confidential and attorney-client privileged information.  Both Mr. Crutchfield, and K. Roach's attorney, Mr. Mitchell, have represented to the Court that they have discussed at length the facts and circumstances of the case, including the

-28-

information K. Roach disclosed to Mr. Crutchfield in the civil cases, and both Mr. Crutchfield and

Mr. Mitchell represent that there is no current conflict of interest in Mr. Crutchfield's continued

representation of D. Roach and they do not see any potential conflict of interest arising down the

road.  See Holloway v. Arkansas, 435 U.S. at 485 (noting that "[a]n attorney representing two

defendants in a criminal matter is in the best position professionally and ethically to determine when

a conflict of interest exists or will probably develop in the course of a trial").  Moreover, both

counsel, as well as both D. Roach and K. Roach,  know at least from the United States having raised

the issue, that a potential defense strategy for either or both of the Roaches is to shift the blame for

one another.  The danger, therefore, that the defendant's attorney could be forced to switch defense

strategies during trial, which concerned the Third Circuit in the United States v. Stewart, while

possible here, does not have the associated danger that a change in strategies may require the use

or disclosure of yet unknown confidential or attorney-client privileged information, because K.

Roach is no longer disclosing information to Mr. Crutchfield.  Where the Third Circuit was also

worried about the law firm's conflicted obligations in having to cross-examine the four witnesses

in the criminal case, the law firm's current witnesses in the parallel civil case, Mr. Crutchfield is no

longer representing K. Roach, and both parties represent that they have clearly drawn the line that

Mr. Crutchfield's obligations are to zealously advocate for D. Roach, even if it means that it is at

the expense of K. Roach, and, similarly, Mr. Mitchell's obligations are to zealously advocate for K.

Roach, even if it is at the expense of D. Roach.  Finally, even though the defendant's interests were

similarly aligned with the law firm's four other clients as co-defendants in the civil case, the Third

Circuit recognized that, because the four witnesses were testifying for the government -- the

defendant's opposing party -- in the criminal case, the interests of the attorney's clients were

materially adverse, creating a serious potential conflict.  In this case, however, neither D. Roach nor

K. Roach are currently testifying on the government's behalf, but are rather co-Defendants whose interests in not being convicted are materially similar, if not identical.

Although the Roaches' previous civil cases are substantially related to this criminal case, that factor does not counsel for disqualifying Mr. Crutchfield, at least at this juncture in the case. See United States v. Bowie, 892 F.2d at 1502 (noting that "the potential for conflict is great" in a successive-representation case "where there is a substantial relationship between the cases"). See also Pinkney v. United States, 851 A.2d at 487 (noting that the first step a district court should take in analyzing whether a conflict of interest exists in a successive representation case is determining "whether the subject matter of the first representation is substantially related to that of the second"). At this time, in this criminal proceeding, just as the Roaches asserted their innocence in defending Sundance Services' RICO allegations in the two related civil cases, "presumably each of these defendant[s'] primary interest is avoiding conviction on the charges pending in [this] case, and there is no indication that in order to do so he must contravene that same interest on the part of any of the others." United States v. Trujillo, 302 F. Supp. 2d at 1252. As the Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, has recognized, the concern in allowing an attorney to represent clients in substantially related subsequent matters stems from the notion that an attorney's "loyalty would be divided between a current client and a former client because an attorney who cross-examines former clients inherently encounters divided loyalties." United States v. Massimino, 832 F. Supp.2d at 515. At the present time, however, neither D. Roach nor K. Roach have made a deal with the United States wherein one may testify against the other. Rather, they are both co-Defendants in this case, both with the interests of avoiding conviction, which are both substantially related to the interests that they had in the substantially related civil cases -- to avoid liability. Seeing that the Roaches' interests appear to be aligned, at least at the

present time, the second factor that the Court of Appeals of the District of Columbia identified in

Pinkney v. United States for analyzing whether a conflict of interest is present in a successive

representation case -- whether "the conflict could cause the defense attorney improperly to use

privileged communications in cross-examination," 581 A.2d at 487 -- thus also weighs against

finding that a current conflict of interest exists in Mr. Crutchfield's representation of D. Roach in

this case.  Moreover, Mr. Mitchell, Mr. Crutchfield, and K. Roach all represent that they do not

believe that Mr. Crutchfield has any of K. Roach's confidential or privileged information which

could prejudice K. Roach at trial.  Based on their representations, K. Roach did not, at any point

during Mr. Crutchfield's previous representations of him, in the civil cases or in this criminal case,

provide Mr. Crutchfield with confidential or privileged information that he may at some point

improperly use in this criminal case.  Even if, therefore, D. Roach's and K. Roach's interests

become adverse to one another at some future time -- either through a blame-shifting tactic or a plea

deal requiring their testimony -- based on the facts before the Court, it appears as though the analysis

of Mr. Crutchfield's possible use of K. Roach's confidential or privileged information does not

change.  Similarly, the third factor identified in Pinkney v. United States, whether "the conflict could

deter the defense attorney from intense probing of the witness on cross-examination to protect

privileged communications with the former client," is not at issue, because of Mr. Crutchfield's

representation of D. Roach in this criminal case.  Although the United States is correct that the two

prior civil cases against the Roaches, in which Mr. Crutchfield represented both defendants, are

substantially related to this criminal case, viewing the Roaches' positions as they exist at this time,

there is no serious probable conflict of interest that would prevent the Court from allowing Mr.

Crutchfield to represent D. Roach.  See United States v. Trujillo, 302 F. Supp. 2d at 1253 ("[T]he

court must examine the conflict picture as it exists at this time to determine whether a conflict either

exists or is probable.")(emphasis omitted).

The United States can only speculate at this time whether the interests of K. Roach and D. Roach will become adverse to one another at some future point in the case.  The United States notes that K. Roach and D. Roach appear to have varying degrees of involvement and potential culpability, because K. Roach is charged with only fourteen counts and named in nine overt acts, whereas D. Roach is charged in sixty-three counts and named in twenty-nine overt acts.  See Response at 12. Nevertheless, any speculation that this charging disparity may lead to a potential conflict of interest if K. Roach takes a plea in exchange for his testimony against D. Roach, which, assuming Mr. Crutchfield has confidential or attorney-client privileged information that would impede his ability to effectively or zealously cross-examine K. Roach, remains speculation.  Such speculation, at this point in the case, cannot overcome the Sixth Amendment's presumption that D. Roach is entitled to Mr. Crutchfield, the counsel of her choice, representing her in this case.  See United States v. Trujillo, 302 F. Supp. 2d at 1253 ("The court should not speculate on every theoretical development that could possibly occur in the case until it finds a scenario leading to a conflict and then use such speculation as a basis to deny defendant the counsel he has chosen."). The hypothetical scenarios that the United States presents establish the possibility of a conflict, but not the probability.  As the Court has stated: "Disqualification should be based at least upon a standard of probability of a conflict developing rather than a mere possibility."  United States v. Bolivar, 2012 WL 3150430, at *13 (quoting United States v. Trujillo, 302 F. Supp. 2d at 1248 n.16)(emphasis in original).  None of the concerns of which the United States speculates move the potential for a conflict from a possibility to a probability.  Moreover, even if K. Roach should plea in exchange for testifying against D. Roach, both Mr. Mitchell and Mr. Crutchfield are aware of the possibility that the other defendant may employ the blame-shifting strategy, and have represented

that, if D. Roach and Mr. Crutchfield took such a strategy, Mr. Crutchfield does not believe that he

has confidential information which would impede his ability to represent D. Roach, and if anything

should change, both parties will promptly bring such information to each other's attention and to

the Court's attention.  Accordingly, the Court find that no current conflict or serious potential

conflict exists requiring disqualification of Mr. Crutchfield, D. Roach's chosen counsel, at this

juncture in the case.

## II.    EVEN IF THERE IS A CONFLICT OF INTEREST, K. ROACH AND D. ROACH MAY WAIVE THE CONFLICT.

At the hearing, the United States conceded that it did not, at the present time, see any current

conflict nor high probability that a conflict would arise in the future because of Mr. Crutchfield's

representation of D. Roach, and that it would be satisfied if the Court required oral waivers at this

hearing and the submission of written waivers after the hearing.  See Tr. at 14:16-15:5 (Williams,

Court).

The Tenth Circuit has indicated that, where a conflict is disclosed, a defendant can

knowingly and intelligently waive the right to conflict-free counsel.  See United States v. Hunt, 62

F. App'x at 277 ("Mr. Hunt's trial counsel disclosed the conflict and obtained a written waiver from

Mr. Hunt . . . .").  Moreover, a district court has significant discretion to accept or refuse a waiver.

See Wheat v. United States, 486 U.S. at 163 (noting that the district court is "allowed substantial

latitude in refusing waivers of conflicts of interest").  In United States v. Stewart, the Third Circuit

held that the district court did not abuse its discretion in disqualifying the law firm from representing

the defendant, even though the defendant and the four witnesses provided the district court with

waivers of the potential conflict.  185 F.3d at 122.  The Third Circuit reasoned that several factors

weighed in favor of disqualifying the law firm, notwithstanding the waivers, including: (i) the trial

-33-

court's institutional interest in truth-seeking, including protecting a defendant from having an attorney with divided interests compromising the defendant's defense; (ii) whether the waivers were sufficiently informed, when the firm still represented the four witnesses in the criminal case and all four witnesses plus the defendant in the civil case, and no one could "foresee what ramifications can flow from multiple representations"; (iii) that the four witnesses may see their waivers as "somehow lessening the damage that their adverse testimony would cause" to the defendant, with whom they maintained personal relationships; and (iv) that the defendant personally, or through his insurance company, was paying the legal fees of two of the other four individuals in the parallel civil case. United States v. Stewart, 185 F.3d at 122.

In this case, K. Roach and D. Roach can therefore provide sufficiently informed waivers, because Mr. Crutchfield is no longer representing K. Roach, and both he and K. Roach -- in consultation with Mr. Mitchell -- can therefore likely see the extent to which Mr. Crutchfield may be able to use the information which K. Roach gave him during the two substantially related civil cases.  Because Mr. Mitchell is K. Roach's independent counsel at the time the Court heard the motion, and because Mr. Crutchfield is representing only D. Roach, as opposed to the situation in United States v. Stewart, Mr. Crutchfield does not have divided interests in this case from which the Court would need to ensure the defendant is adequately protected.  Once additional independent counsel also advises D. Roach, and once D. Roach and K. Roach provide the Court with the required informed, written waivers, any argument that Mr. Crutchfield's interests are divided becomes even more tenuous.  If the Roaches' civil cases were ongoing, as in United States v. Stewart, there would be an argument that it would be difficult for Mr. Crutchfield, K. Roach, D. Roach, or Mr. Mitchell to foresee what potential ramifications may flow to this criminal case from Mr. Crutchfield's continued representation of both of the Roaches in that civil case, because there would exist the

danger of more statements, not foreseen at the time of the waiver, which could create a conflict in the future.  The Roaches' civil cases have both terminated, however, and the Court has determined that any potential conflict in Mr. Crutchfield's continued representation of D. Roach in this criminal case is speculative and unlikely to impact Mr. Crutchfield's representation, given that both of the Roaches interests in this criminal case -- avoiding conviction -- are substantially similar.  Moreover, Mr. Crutchfield, D. Roach, K. Roach, and Mr. Mitchell all agree that Mr. Crutchfield does not have any information that will prejudice K. Roach or Mr. Crutchfield's representation of D. Roach, and Mr. Mitchell has affirmatively asserted that, should this belief change at some point in the future, he will immediately alert Mr. Crutchfield and the Court to the possibility of the existence of an actual conflict of interest.  See  Tr. at 10:18-11:6 (Mitchell, Court).  On the other hand, K. Roach and D. Roach are husband and wife, giving them a personal relationship admittedly stronger than the personal friendship at issue in United States v. Stewart, and also making this case arguably analogous to the situation in  United States v. Stewart in which the defendant was paying two of the witnesses attorneys fees in the related civil case.  Both Mr. Mitchell and Mr. Crutchfield have noted, however, that all parties are clear that they may have adverse interests, and each attorney is representing only his client's best interests, even at the expense of the other.  Additionally, the situation in which a husband and wife are both paying for their respective attorneys out of their community property is distinguishable from the situation presented the Third Circuit in United States v. Stewart, in which a business owner, or the business itself, pays for employees' attorneys fees.  The Court, therefore, finds the facts in this case distinguishable from those in which the Third Circuit held that the district court did not abuse its discretion in refusing to accept a waiver in United States v. Stewart.

       The United States Court of Appeals for the First Circuit has stated that "disqualification of

. . . counsel should be a measure of last resort." In re Grand Jury Proceedings, 859 F.2d at 1026.  It is worth noting that, while the United States moved the Court for a hearing on whether Mr. Crutchfield has a conflict of interest, and if so, whether the conflict may be waived, the United States agrees there is no existing conflict of interest and has thus not moved to disqualify Mr. Crutchfield. See United States v. Migliaccio, 34 F.3d at 1528 (noting that, where the government is aware of a conflict of interest, it "has a duty to bring it to the court's attention and, if warranted, move for disqualification").  The Court believes that, on balance, the possibility that there may be a potential conflict of interest in the future is small, and that D. Roach's substantial interest in retaining her counsel of choice substantially outweighs that risk, and finds that D. Roach and K. Roach may waive any potential conflict.  See United States v. McKeighan, 685 F.3d at 968 (stating that, if a conflict of interest exists, "the attorney usually may be excluded unless the likelihood and severity of the conflict are minimal compared to the defendant's interest in obtaining counsel of choice" ).  Other courts have similarly accepted waivers even when counsel possessed information "closely related to the events alleged in the indictment." United States v. Massimino, 832 F. Supp. 2d at 518.  Additionally, courts have refused to disqualify counsel where "[there is no evidence . . . that defense counsel's representation or prior involvement with [a] Government witness would be detrimental to the witness or to [the] defendant . . . or that other interests would effect counsel's performance." United States v. Penn, 151 F. Supp. 2d at 1326.

Given that the Court has found that any potential for conflict is speculative, and that divided interests between K. Roach and D. Roach stemming from his previous representation of the Roaches will not limit Mr. Crutchfield's representation of D. Roach, the Court believes that waivers are

appropriate, and that K. Roach and D. Roach may waive any conflict that might be present.[3]   K.

Roach has retained Mr. Mitchell in this case, Mr. Mitchell informed him of the potential for conflict,

see Tr. at 6:6-17 (Mitchell), and K. Roach has determined that he is not concerned, based on the

information he provided to Mr. Crutchfield during the prior civil cases and this case, and in his

communications with Mr. Mitchell, that a conflict might arise in the future.   Similarly, D. Roach has

determined that the benefit to her in Mr. Crutchfield representing her in this case substantially

outweighs any possible danger that his past representation of K. Roach in the similar civil cases and

_____

[3]The Court has previously concluded that, before the Court may accept a defendant's informed waiver, it must conduct a colloquy with them to ensure that they understand the risks associated with entering these waivers.   See United States v. Bolivar,  2012 WL 3150430, at *16 ("Before the Court may accept Mendoza–Renteria's and Bolivar's waivers, however, the Court must conduct a colloquy with them to ensure that they understand the risks associated with entering these waivers.").   The Court has noted that this colloquy is necessary, because the Tenth Circuit requires a district court to investigate with each defendant whether their waiver is knowing and voluntary. See United States v. Winkle, 722 F.2d at 611 (holding that a trial court should "affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel").

In United States v. Bolivar, the Court conducted a colloquy after the defendant, and the former client of the defendant's attorney and a co-defendant, submitted written waivers, and after the Court issued its Memorandum Opinion and Order determining that any possible conflict was waivable.   See 2012 WL 3150430, at *16.   There is no procedural requirement compelling a district court to proceed in this sequence.   At the hearing in this case on August 13, 2012, the Court determined that it was in the interests of judicial economy to proceed through the colloquy with both K. Roach and D. Roach before deciding whether there is a conflict of interest, and whether, if there is, it is waivable.   The Court determined judicial economy counseled in favor of proceeding through the colloquy and taking the oral waiver at the hearing, because: (i) K. Roach already had independent counsel present at the hearing, Mr. Mitchell, with whom he had discussed the possibility of a waiver for Mr. Crutchfield's representation of D. Roach in this criminal case; (ii) K. Roach and Mr. Mitchell had discussed the possible implications which stemmed from such a waiver; (iii) D. Roach and Mr. Crutchfield discussed the possible implications stemming from her waiver and Mr. Crutchfield's continued representation when K. Roach is a past client; and (iv) counsel came to the hearing from various parts of the state, making it difficult to reconvene counsel solely for the colloquy after the Court's decision.   The Court usually sits in Albuquerque, New Mexico; Mr. Crutchfield is from Lovington, New Mexico; the Roaches and Patterson are from Eunice, New Mexico; Mr. Mitchell is from Ruidoso, New Mexico; and the hearing was in Las Cruces, New Mexico.

in this case may impede his zealous representation of her in this case.  She is entitled to make that choice.  See United States v. Pizzonia, 415 F. Supp.2d at 182 ("Defendant does possibly reduce the number of defense strategies by continuing to retain defense counsel. . . .  Nevertheless, he insists on asserting his Sixth Amendment right to counsel of his own choosing.").

To satisfy the Court that D. Roach's waiver is informed, however, the Court will require, as Mr. Crutchfield agreed at the hearing, see Tr. at 22:16-18 (Crutchfield), a written waiver indicating that independent counsel advised D. Roach regarding the implications of such a waiver. Additionally, for the Court to be satisfied that it has adequately protected its interest in ensuring that it conducts an ethical and professional criminal trial, the Court will also require K. Roach to file his informed, written consent with the Court as agreed at the hearing.  See United States v. McKeighan, 685 F.3d at 968 (noting that the federal courts have an ethical interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them").  The Waivers should be in the form filed in United States v. Bolivar, No. CR 12-0128 JB.  See Waiver by Miguel Bolivar, filed June 20, 2012 (Doc. 206); Waiver by Eugenio Mendoza-Renteria, filed June 20, 2012 (Doc. 207).  Mr. Crutchfield must also obtain Patterson's consent in the form filed in United States v. Bolivar.  See Second Amended Notice of Position of Other Defense Counsel as to Defendant Miguel Bolivar's Motion to Substitute Counsel [Doc. 182], filed July 1, 2012 (Doc. 218).

**IT IS ORDERED** that the Motion to Withdraw as Counsel for Kelly Roach and for Appointment of Counsel, filed June 21, 2012 (Doc. 53) is granted on the condition that Defendants Kelly D. Roach and Donna L. Roach file with the Court their informed, written waiver, and Mr. Crutchfield obtain Defendant Michael G. Patterson's consent as required in this Memorandum Opinion and Order, and as discussed at the August 13, 2012 hearing.  The Court grants Plaintiff

United States of America's request in the United States' Response to Defendant Kelly Roach's

Motion to Withdraw as Counsel and Motion for Hearing on Conflict Waiver, filed July 5, 2012

(Doc. 62), to hold a hearing , which the Court did on August 13, 2012.  The Court determines that

there is no current conflict of interest in Mr. Crutchfield's representation of D. Roach, and to the

extent a conflict may arise in the future, it can be waived, and the Court will accept D. Roach's and

K. Roach's written waivers, and Patterson's consent, when they file them.


_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Richard C. Williams
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

C. Barry Crutchfield
Law Office of C. Berry Crutchfield
Lovington, New Mexico

   *Attorney for Defendant Donna Roach*

Gary C. Mitchell
Gary C. Mitchell, P.C.
Ruidoso, New Mexico

   *Attorney for Defendant Kelly Roach*

Jason Bowles
Bowles & Crow
Albuquerque, New Mexico

   *Attorney for Defendant Michael G. Patterson*